Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| MARÍA EUGENIA RODRÍGUEZ CAMPAS Y OTROS<br><br>Parte Recurrente<br><br>v.<br><br>CONSEJO TITULARES Y JUNTA DE DIRECTORES Y COND. CONDADO DEL MAR PRES. JOSÉ FERNÁNDEZ ROMEAU<br><br>Parte Recurrida | TA2026AP00136 | *APELACIÓN* **se acoge como Revisión Judicial** procedente del Departamento de Asuntos del Consumidor<br><br>Querella Núm.: C-SAN-2024-0018598<br><br>Sobre:<br>Ley de Condominios de Puerto Rico, Ley Núm. 129 de 16 de agosto de 2020, según enmendada |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora.

Salgado Schwarz, Carlos G., juez Ponente.

## S E N T E N C I A

En San Juan, Puerto Rico, a 10 de abril de 2026.

Comparece ante nos María Eugenia Rodríguez Campa, Zulma Ramos, María Procaccino, Nick Santana, Luna Homes LLC, Santini Homes LLC, Rosario Goyco, Iris Altreche, Joseph Liso Y Fred Reichard (en adelante y en conjunto, "parte recurrente") y nos solicita que revoquemos la *Resolución Sumaria* emitida y notificada el 4 de diciembre de 2025, por el Departamento de Asuntos del Consumidor (en adelante, "el DACo"). Mediante el referido dictamen, el foro administrativo declaró *No Ha Lugar* la *Querella* presentada por la parte recurrente, por una derrama y adquisición de un generador como mejora, en contra del Consejo de Titulares Condominio Condado del Mar, Junta de Directores Condominio Condado Del Mar y José L. Fernández, como su presidente (en

adelante y en conjunto "Consejo de Titulares" o "parte recurrida"). En su consecuencia, ordenó el cierre y el archivo de la mencionada *Querella*.

Por los fundamentos que exponemos a continuación, **revocamos** la *Resolución Sumaria* recurrida. Veamos.

-I-

El 15 de abril de 2024, la parte recurrente presentó una *Querella* en el DACo, en contra del Consejo de Titulares del Condominio Condado del Mar (en adelante "el Condominio").[1] Alegó que el 23 de marzo de ese mismo año, el Condominio celebró una Asamblea Ordinaria en la que, como parte de los temas a discutir, el tema número nueve (9) de la agenda establecía que:

> Se propone al Consejo de Titulares la aprobación para la adquisición e instalación de un generador eléctrico para energizar tanto áreas comunes y privadas. El costo estimado del proyecto es de $1,687,425[.00] y será hecho por Antilles Power con la supervisión adicional del Ing. García. Para sufragar esta obra, se propone la aprobación de una derrama de 12 meses comenzando el 1 de abril de 2024.[2]

Adujo que en esa misma Asamblea, se aprobó el tema antes citado por la mayoría de los presentes en ella. Impugnó dicho acuerdo tomado por el Consejo de Titulares bajo el fundamento de que este era una obra de mejora que se aprobó por derrama, por lo que requería voto unánime de los titulares y no la mayoría. Sostuvo que el Condominio ya cuenta con un generador funcional y que la adquisición de un nuevo generador no fue aprobada para suplir la demanda que ya era parte del generador existente, sino para energizar tanto áreas comunes como privadas. Alegó que no se trata de elementos mecánicos esenciales para

---

[1] Apéndice Núm. 1 de la Entrada Núm. 1 del Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI).

[2] Página 5 del Apéndice Núm. 1 de la Entrada Núm. 1 del SUMAC TPI.

el buen funcionamiento de los elementos comunes generales, sino que un generador adicional es algo de conveniencia, lo cual aumentaría el valor y productividad de la propiedad, por lo que debe ser tratado como una mejora y requerir para ello el consentimiento unánime de los titulares, si se aprueba por derrama.

El 17 de mayo de 2024, el Consejo de Titulares presentó una *Contestación a Querella*.[3] Alegó que la adquisición de un generador eléctrico que energice las áreas comunes y privadas es una obra necesaria. Sostuvo que, al ser una obra necesaria, lo que se requiere es una aprobación mayoritaria, tanto para el generador eléctrico, como para la derrama aprobada.

Pasados varios trámites procesales, el 27 de octubre de 2025, el Consejo de Titulares presentó una *Moción en Solicitud de Resolución Sumaria*.[4] En dicha *Moción* alegó que la Asamblea celebrada cumplió con todo lo dispuesto en ley para alcanzar un acuerdo vinculante para todos los propietarios del Condominio. Adujo que según la Ley de Condominios[5], la adquisición de un generador de energía eléctrica que supla demanda tanto para áreas comunes y privadas es un elemento común general. Además, sostuvo que para realizar obras necesarias para la conservación o seguridad del inmueble lo que se requiere es el voto de la mayoría.

Celebrada una vista administrativa el 29 de octubre de 2025, el foro administrativo emitió y notificó la *Resolución Sumaria* que hoy nos ocupa, el 4 de diciembre

---

[3] Apéndice Núm. 3 de la Entrada Núm. 1 del SUMAC TPI.
[4] Apéndice Núm. 6 de la Entrada Núm. 1 del SUMAC TPI.
[5] Ley de Condominios de Puerto Rico, Ley Núm. 129 de 16 de agosto de 2020, según enmendada, 31 LPRA sec. 1921 *et seq.*

de 2025. El en referido dictamen, realizó las siguientes Determinaciones de Hechos:

1. La parte querellante la componen los siguientes titulares del Condominio Condado del Mar:

   a) María Eugenia Rodríguez Campa, titular del apartamento B-4.

   b) Zulma Ramos Rodríguez, titular del apartamento 602.

   c) Luz Nereida González, también conocida como Luz Nereida González Pérez, titular del apartamento 1002.

   d) María Procaccino, también conocida como María Procaccino Piombino, titular del apartamento 1107.

   e) Nick Santana, también conocido como Nicolas Santana, [sic] Cabreja, titular del apartamento 416.

   f) Luna Homes, LLC, titular del apartamento 717.

   g) Santini Homes, LLC, titular del apartamento 1819.

   h) Rosario Goyco Carmoega, titular del apartamento 916.

   i) Iris D. Altreche, titular del apartamento 912.

   j) Joseph Manuel Liso González, titular del apartamento B-20.

   k) Fred Reichard, titular del apartamento 207.

   l) Wilfredo Rodríguez, titular del apartamento 2203.

   m) Blanca M. Ramos Malavé, titular del apartamento 1119.

   n) Luis R. Córdova Rivera, titular del apartamento 811.

   o) Eloy Ramos, titular del apartamento 815.

   p) Vilma Del Prado Corvison, titular del apartamento 919.

   q) Mercedes Rivera Goetz, titular del apartamento 1511.

2. El Condominio Condado del Mar se encuentra sometido al Régimen de Propiedad Horizontal.

3. El 23 de marzo de 2024 se efectuó la asamblea ordinaria del Condominio Condado del Mar en donde se aprobó la adquisición e instalación de un generador eléctrico para energizar tanto áreas comunes y privadas, por la cantidad de $1,687,425.00. Este acuerdo fue aprobado por el voto mayoritario de los titulares, al igual que

una derrama para la adquisición del nuevo generador eléctrico.

4. Inconforme con la decisión del Consejo de Titulares, el 15 de abril de 2024, la parte querellante presentó la querella de epígrafe por entender que en la asamblea del 23 de marzo de 2024 no se presentó el plano del propuesto generador y su instalación. A esos efectos, entendió la parte querellante que podría afectar la fachada del condominio al instalarse el nuevo generador. Además, impugnó el acuerdo relacionado con la adquisición del nuevo generador eléctrico por entender que se trataba de una obra de mejora tras aprobarse una derrama, cuyo acuerdo solamente contó con el voto mayoritario y no unánime de los titulares.

5. La parte querellante planteó en su querella que el Condominio Condado del Mar se ha convertido en un foco de actividad de arrendamientos a corto plazo por lo que contar con una planta eléctrica que brindaría servicios a elementos comunales y a las áreas privativas e individualizadas de los apartamentos sería un atractivo que aumentaría el valor y productividad de la propiedad y constituiría una variación del uso de un elemento comunal.

6. La parte querellante planteó que el reemplazo del generador eléctrico existente por uno de mayor capacidad, [*sic*] sería una obra de mejora ya que se estaría dejando el generador actual como un apoyo "backup".

7. La parte querellante planteó que con la determinación del Consejo de Titulares adoptada en la asamblea del 23 de marzo de 2024 se estaría obligando a aquel titular que no use, o no quiera tener generador eléctrico en su apartamento, a pagar por el diesel y mantenimiento de algo que otros titulares usen, por lo que seria un enriquecimiento injusto.

8. La parte querellante planteó que un generador eléctrico que aumenta la capacidad para añadir otras áreas que antes no tenían el servicio de dicho equipo, aumentaría el valor y productividad del inmueble.

9. La parte querellante reclama que este Departamento declare que la adquisición de un generador eléctrico que aumente su capacidad existente y expandiera su uso a las áreas privativas es una obra de mejora, la cual de ser aprobada su adquisición mediante derrama, requeriría la unanimidad de los titulares.

10. La parte querellada planteó que la adquisición de un generador eléctrico que supla la demanda tanto para las áreas comunes y privadas es un elemento común general necesario, no susceptible de propiedad individual por los titulares y sujetos a un régimen de indivisión forzosa, y por ende, todo acuerdo relacionado con la instalación de un generador eléctrico que supla la demanda de áreas comunes, o comunes y privadas, será considerado como una obra necesaria, la cual

solamente requerirá el voto mayoritario de los titulares.

11. El 14 de mayo de 2024, la parte querellante presentó la primera enmienda a la querella original solamente para incluir tres (3) nuevos titulares como co-querellantes. Luego, el 22 de abril de 2024, la parte querellante presentó la segunda enmienda a la querella, solamente a los fines de incluir dos (3)[*sic*] nuevos titulares como co-querellantes.

12. De la querella original ni enmendada, no existen alegaciones ni reclamaciones de daños y perjuicios por parte de los querellantes.

13. El 24 de abril de 2025, el Consejo de Titulares Condado del Mar celebró su asamblea ordinaria. Entre los asuntos discutidos, e incluidos previamente en la convocatoria se encontraba la aprobación del cambio de uso de varios estacionamientos comunales para ubicar el nuevo generador objeto de la presente querella. La votación sobre este asunto fue de 68 votos a favor y 7 votos en contra. (Exhibits 1 y 2).

14. La asamblea del 24 de abril de 2025 no fue impugnada por la parte querellante. Tampoco la presente querella fue enmendada para impugnar la asamblea antes mencionada ni los acuerdos allí adoptados.

15. El 29 de octubre de 2025, este Departamento celebró una vista administrativa centrada en la controversia sobre la naturaleza jurídica de la adquisición e instalación de un generador eléctrico en el Condominio Condado del Mar: si constituía una obra necesaria o una mejora, y el cambio de uso de estacionamientos para acomodar dicho generador. A esos efectos, se constató que la controversia era de estricto derecho, por lo que ambas partes coincidieron en que el expediente documental era suficiente para que este Departamento emitiera una determinación.

16. En la vista administrativa, la parte querellante planteó que aumentar la capacidad del generador para suplir áreas privativas constituye una mejora, apoyándose en el historial legislativo de la Ley de Condominios y en la eliminación de lenguaje en el Artículo 17 de la referida ley.

17. En la vista administrativa, la parte querellada sostuvo que la Ley de Condominios era clara al considerar la instalación o cambio de generador eléctrico que supliera áreas comunes y privadas como obra necesaria. Afirmó que la aprobación se realizó por mayoría en asamblea, incluyendo el cambio de uso de estacionamientos.

18. A la fecha de la vista administrativa, el generador eléctrico no ha sido instalado.

19. Las partes acordaron que las controversias ante nuestras consideración eran de estricto

derecho por lo que solicitaron que se emitiera una resolución sumaria por no haber controversia de hechos.

20. Las partes estipularon los siguientes documentos como evidencia documental:

    a) Exhibit 1 - Convocatoria de Asamblea Ordinaria celebrada el 24 de abril de 2025.

    b) Exhibit 2 - Acta de Asamblea Ordinaria celebrada el 24 de abril de 2025.

    c) Exhibit 3 - Notificación importante a titulares 0 Asamblea Ordinaria celebrada el 24 de abril de 2025.

El DACo concluyó que la adquisición de un nuevo generador eléctrico en el Condominio, aprobado por el Consejo de Titulares en la Asamblea del 23 de marzo de 2024, no es una obra de mejora, y la derrama aprobada en dicha Asamblea no requería del voto unánime de sus miembros. Resaltó que la Ley de Condominios, *supra*, no impone limitaciones al tipo de generador, cantidad de generadores que se pueden instalar, combustible a ser utilizado, ni localización. A base de esto, concluyó que los gastos necesarios para la adquisición, sustitución o reparación de un generador de energía eléctrica que supla la demanda de áreas comunes, o comunes y privadas del Condominio, como elemento común necesario, constituye una obligación inherente al adecuado sostenimiento del inmueble. Por ello, declaró *No Ha Lugar* la *Querella* presentada y ordenó su cierre y archivo.

Inconforme, el 9 de febrero de 2026, la parte recurrente acudió ante nos mediante apelación, acogida como una revisión judicial, y señaló los siguientes errores:

**PRIMER ERROR:** La Resolución Sumaria del DACo parte de una premisa jurídica incorrecta, al tratar automáticamente la calificación de "obra necesaria" por razón del objeto intervenido —esto es, la instalación o el cambio de un generador eléctrico— sin analizar la naturaleza, alcance y

finalidad de la obra concreta sometida a su consideración. También el DACo prescindió de distinguir entre la clasificación de los elementos comunes y la jerarquía funcional que existe entre dichos elementos, equiparando indebidamente todo elemento común necesario a aquellos sin los cuales resulta imposible la subsistencia del régimen de propiedad horizontal. Como resultado, dejó de evaluar si la actuación aprobada respondía a una finalidad de conservación o funcionamiento esencial del inmueble, o si, por el contrario, constituía una obra de mejora, con las consecuencias jurídicas correspondientes en cuanto al quantum de votación aplicable, el cual debió ser unanimidad.

**SEGUNDO ERROR:** Erró el DACo al interpretar el Artículo 17(a)(7) de la Ley Núm. 129-2020 interpretando incorrectamente los principios de hermenéutica legislativa, al ignorar que la Asamblea Legislativa eliminó expresamente del texto propuesto cualquier disposición que declarara, de forma categórica, que la instalación o el cambio de un generador no constituiría una obra de mejora.

**TERCER ERROR:** Aun si se entendiera —en la alternativa— que la adquisición del generador adicional constituye una obra necesaria, la Resolución del DACo resulta inconsistente con sus propias Determinaciones de Hechos al convalidar la aprobación de dicha adquisición mediante votación de mayoría de los presentes en asamblea, cuando para ejecutar su instalación se aprobó afectar adversamente áreas y elementos comunes del condominio, incluyendo el cambio de uso de cuatro (4) estacionamientos comunales. En este caso el quantum de votación aplicable no es el de mayoría simple.

**CUARTO ERROR:** El DACo incurrió en error al aplicar de forma incompleta, fragmentada y fuera de contexto el Artículo 44 de la Ley de Condominios, al convalidar mediante mayoría simple la aprobación de la instalación un nuevo generador eléctrico, aun cuando dicho artículo regula actuaciones constitutivas de una mejora y exige un quantum cualificado cuando se altera el uso de áreas comunes. De determinarse que se trata de una mejora, se aprobó la imposición de una derrama que requiere un mecanismo decisional más estricto que la mayoría simple o el de dos terceras (2/3) partes.

El 4 de marzo de 2026, la parte recurrente presentó ante esta Curia una *Moción en Auxilio de Jurisdicción*[6] y nos solicitó paralizar toda obra relacionada con la instalación del generador eléctrico adicional. Dicha

---

[6] Entrada #5 del del Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC TA).

*Moción* fue declarada *Ha Lugar* por este Tribunal en esa misma fecha.

El 10 de marzo de 2026, en cumplimiento con nuestra *Resolución* del 11 de febrero de 2026, la parte recurrida presentó su alegato en oposición. En síntesis, alegó que la adquisición de un generador eléctrico que supla energía tanto para las áreas comunes, o las comunes y privadas, utilizando la infraestructura eléctrica del Condominio, constituye una obra necesaria que requiere solo de la aprobación de la mayoría de los titulares congregados en Asamblea. Sostuvo que el Consejo de Titulares cumplió con todos los requisitos que exige la Ley de Condominios, *supra*, para alcanzar acuerdos vinculantes para todos. Además, resaltó que la parte recurrente no impugnó el acuerdo de localización del generador eléctrico ni tampoco enmendó su *Querella* para incluir una objeción al acuerdo de uso de los estacionamientos comunes, por lo que esa reclamación no era parte de las controversias ante el DACo.

Con la comparecencia de las partes, procedemos a resolver la controversia ante nuestra consideración.

-II-

A

En nuestro ordenamiento, la revisión judicial de decisiones administrativas tiene como fin primordial limitar la discreción de las agencias y asegurar que estas desempeñen sus funciones conforme a la ley.[7] Esta doctrina dispone que corresponde a los tribunales examinar si las decisiones de las agencias administrativas fueron tomadas dentro de los poderes

---

[7] *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 891-892 (2008).

delegados y si son compatibles con la política pública que las origina.[8] Por lo general, el ejercicio de revisión judicial de una decisión administrativa suele ceñirse a tres áreas: (1) la concesión del remedio apropiado; (2) la revisión de las determinaciones de hechos conforme al criterio de evidencia sustancial; y (3) la revisión completa y absoluta de las conclusiones de derecho.[9]

Ahora bien, dentro de este marco, los tribunales apelativos deben concederle gran deferencia a las decisiones emitidas por las agencias, debido a la vasta experiencia y conocimiento especializado que estas tienen en los asuntos que se les han sido encomendados.[10] De esta manera, estas determinaciones son amparadas por una presunción de legalidad y corrección, la cual los tribunales deben respetar mientras la parte que las impugna no presente evidencia suficiente para derrotarlas.[11] A la luz de lo anterior, los tribunales deben ser cautelosos al intervenir con las conclusiones e interpretaciones de los organismos administrativos especializados.[12]

Ahora bien, la deferencia reconocida a las decisiones de las agencias administrativas cede en algunas situaciones, tales como: (1) cuando la decisión no esté basada en evidencia sustancial; (2) cuando la agencia haya errado en la aplicación de la ley; (3) cuando su actuación resulte ser arbitraria, irrazonable

---

[8] *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018).
[9] *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010).
[10] *Rolón Martínez v. Supte. Policía*, *supra*, pág. 35; *Asoc. Fcias. v. Caribe Specialty et al. II.*, *supra*, pág. 940.
[11] *Rolón Martínez v. Supte. Policía*, *supra*, pág. 35, citando a *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016).
[12] *García Reyes v. Cruz Auto Corp.*, *supra*, pág. 892.

o ilegal; y (4) cuando la actuación administrativa lesiona derechos constitucionales fundamentales.[13]

Entretanto, la Ley Núm. 38 de 30 de junio de 2017, conocida como la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (Ley Núm. 38-2017)[14] recoge el alcance de la revisión judicial en su Sección 4.5, al establecer que:

> El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio.
>
> Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.
>
> Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal.[15]

Conforme lo dispone la precitada ley y la jurisprudencia, las conclusiones de derecho son revisables en todos sus aspectos.[16] Empero, ello no significa que se podrá descartar libremente las conclusiones e interpretaciones de la agencia para sustituirla por el criterio del tribunal.[17] En ese entonces, el tribunal está llamado a aplicar los criterios anteriores de intervención, especialmente en aquellas situaciones en que no encuentre una base racional que fundamente la actuación administrativa.[18] En virtud de este análisis, cabe recordar que los tribunales solo deben intervenir en las decisiones administrativas cuando concluyan que se ha actuado arbitraria, ilegal o irrazonablemente.[19]

---

[13] *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 822 (2012), citando a *Empresas Ferrer v. ARPE*, 172 DPR 254, 264 (2007).
[14] 3 LPRA secs. 9603-9713.
[15] 3 LPRA sec. 9675.
[16] *Torres Rivera v. Policía de PR*, *supra*, pág. 627.
[17] *García Reyes v. Cruz Auto Corp.*, *supra*, pág. 894.
[18] *Íd.*, pág. 896.
[19] *Rolón Martínez v. Supte. Policía*, *supra*, pág. 36.

**B**

A tenor con el Artículo 17(a)(7) de la *Ley de Condominios*[20], un generador de energía eléctrica que supla la demanda de áreas comunes, o comunes y privadas, haciendo uso de la infraestructura eléctrica del condominio, se considera como un elemento común general necesario. Sobre el particular, Godreau describe un elemento común necesario como aquel sin el cual "sería imposible el adecuado disfrute de las unidades como propiedades individualizadas.[21] Una mejora, sin embargo, la describe como "una obra dirigida a aumentar el valor o la productividad de un bien[…]".[22]

Ahora bien, el Artículo 18 de la Ley de Condominios, *supra*, dispone, en cuanto a los acuerdos para conservación y uso de elementos comunes que:

> **Las obras necesarias para la conservación o seguridad del inmueble y para el uso eficaz de los elementos comunes serán acordadas por la mayoría de los titulares.** Si las de uso eficaz menoscabasen el disfrute de algún titular en particular, éstas no podrán realizarse sin el consentimiento del titular afectado. La objeción del titular afectado deberá estar fundamentada.
>
> **Para toda otra obra que afecte en forma adversa los elementos comunes del inmueble se requerirá el consentimiento de dos terceras partes (2/3) de los titulares, que a su vez, reúnan dos terceras partes (2/3) de las participaciones en las áreas comunes.** No se podrá realizar obra alguna que afecte la solidez y estructura del edificio. (Énfasis Nuestro).

En atención a un generador de energía eléctrica, Godreau expresa lo siguiente:

> La clasificación del generador como elemento común voluntario, -ubicado en el inciso a) de los necesarios y no bajo el inciso b) en el que se enumeran los voluntarios-, solo tiene sentido si lo que se ha querido resaltar es que su instalación no debe considerarse como una mejora **de forma que su adquisición pueda aprobarse por 2/3 partes de los titulares y de participación *aunque se imponga***

---

[20] 31 LPRA sec. 1921p.
[21] M. J. Godreau, *El Condominio: El Régimen de Propiedad Horizontal en Puerto Rico*, 2da. ed., San Juan, Ediciones SITUM, 2019, pág. 139.
[22] Godreau, *supra,* pág. 246 [libro].

*una derrama*.[23] (Énfasis Nuestro).

Es importante resaltar que, los elementos comunes generales necesarios **se caracterizan por su función esencial de garantizar la existencia, seguridad, conservación y el adecuado uso y disfrute de los apartamentos.**[24] Por ello, gozan de carácter indispensable.[25] Tal carácter no puede ser otorgado ni privado por la voluntad de los titulares, ya que es impuesto por mandato de ley.[26]

Por otro lado, la Ley de Condominios, *supra*, describe una obra de mejora como "[t]oda obra permanente que no sea de mantenimiento, **dirigida a aumentar el valor o la productividad de la propiedad en cuestión o a proveer mejores servicios para el disfrute de los apartamentos o de las áreas comunes**".[27]

El Art. 18 de la Ley Núm. 129-2020, dispone que las obras necesarias para la conservación o seguridad del inmueble y para el uso eficaz de los elementos comunes serán acordadas por la mayoría de los titulares. Si las de uso eficaz menoscabasen el disfrute de algún titular en particular, éstas no podrán realizarse sin el consentimiento del titular afectado. La objeción del titular afectado deberá estar fundamentada. Para toda otra obra que afecte en forma adversa los elementos comunes del inmueble se requerirá el consentimiento de dos terceras partes (2/3) de los titulares, que a su vez, reúnan dos terceras partes (2/3) de las

---

[23] Godreau, *supra,* pág. 242 [libro].
[24] *Cestero Aguilar v. Jta. Dir. Condominio*, 184 DPR 1 (2011); *Consejo Titulares v. Ramos Vázquez*, *supra*; *Junta Dir. Cond. Montebello v. Torres*, 138 DPR 150 (1995). (Énfasis Nuestro).
[25] *Íd.*; *Trigo Margarida v. Junta Directores*, 187 DPR 384 (2012); *Consejo Titulares v. Ramos Vázquez*, 186 DPR 311 (2012).
[26] *Arce v. Caribbean Home Construction*, 108 DPR 225, 237 (1978), *citando a* J. Bugeda Lanzas, *La Propiedad Horizontal*, (1954).
[27] 31 LPRA sec. 1921b(q). (Énfasis Nuestro).

participaciones en las áreas comunes. No se podrá realizar obra alguna que afecte la solidez y estructura del edificio.

Ahora bien, las obras de mejora sólo podrán realizarse, mediante la aprobación de dos terceras partes (2/3) de los titulares que a su vez reúnan las dos terceras partes (2/3) de las participaciones en las áreas comunes. Los titulares que posean elementos comunes limitados podrán realizar, a su costo, y luego de obtener el consentimiento de todos los titulares beneficiados, aquellas mejoras o inversiones que estimen convenientes para tales elementos comunes limitados, siempre y cuando, las mismas no afecten la seguridad y solidez del edificio, ni menoscaben el disfrute de ninguna de las restantes unidades por parte de sus titulares. Si las mejoras o inversiones alteran la fachada del edificio, o el uso de un área común, deberá obtener la previa aprobación de dos terceras partes (2/3) de los titulares, que a su vez, reúnan las dos terceras partes (2/3) de las participaciones en las áreas comunes.[28] Dispone, además, que se requiere el consentimiento unánime del Consejo de Titulares cuando dichas obras de mejora requieran derrama.[29]

### -III-

En el presente recurso, la parte recurrente esbozó cuatro señalamientos de error. El primer y segundo error, estriban en esencia, en determinar si la adquisición de un generador eléctrico adicional, que requiere la imposición de una derrama, debe ser considerado como una obra necesaria o una mejora.

---

[28] Art. 49(d)(3).
[29] *Íd.*

La parte recurrente sostiene que la adquisición de un generador adicional transforma, modifica, amplía y mejora el sistema de generación actual, con el único propósito de suplir energía a los apartamentos. Alega que dicha obra no puede convalidarse como necesaria, sino como una mejora, ya que la ampliación del sistema eléctrico para beneficiar áreas privativas no se limita a conservar ni a restituir un servicio preexistente, sino que expande su alcance funcional. Sostiene que la naturaleza de la obra, sea necesaria o mejora, no se define por el objeto intervenido, sino por la finalidad concreta de la obra o trabajos aprobados, y por el impacto funcional que esta tiene sobre el régimen.

Aduce, además, que el trámite legislativo del proyecto que culminó en la Ley de Condominios, *supra*, eliminó del texto propuesto cualquier disposición que estableciera, de manera expresa y absoluta, que la instalación de generadores eléctricos no constituiría una obra de mejora. Alega que esa supresión refleja la intención de no cerrar la puerta a dicha clasificación, sino de mantenerla abierta a evaluación caso a caso. Le asiste la razón.

Cuando se habla de algo necesario, se refiere a que dicha cosa hace falta **indispensablemente** para algo. En cuanto a la Ley de Condominios, *supra*, ese algo necesario, se refiere a que es indispensable para la conservación o seguridad del inmueble. Es esa obra necesaria para la cual solo requiere de la aprobación de una mayoría simple de los titulares.

Ahora bien, la obra necesaria que contempla la precitada ley, en cuanto a un generador eléctrico, es aquella que es indispensable para la conservación o

seguridad del inmueble. Dicho de otro modo, la planta eléctrica necesaria es aquella sin la cual no podría operarse áreas comunes, o comunes y privadas, necesarias para la conservación y seguridad del inmueble.

En este caso, ya esa necesidad contemplada en la ley está suplida. En el Condominio ya existe un generador eléctrico funcional para las áreas comunes, o comunes y privadas, que requieren energía para la conservación y seguridad de este. Lo que propone la parte recurrida es añadir un generador eléctrico adicional para suplir energía a áreas privadas. Áreas que, si no reciben energía eléctrica, no se vería afectada la conservación y seguridad del Condominio.

Al hacer dicho análisis, no cabe otra conclusión que el añadir un generador eléctrico adicional, el cual no es indispensable y por ende no necesario, resulta ser una mejora. La finalidad de este generador eléctrico adicional no es conservación, sino aumentar la productividad de la propiedad y proveer mejores servicios para el disfrute de los apartamentos, específicamente áreas privadas. Y ello es precisamente la definición de una obra de mejora.

Al clasificar la adquisición de este generador eléctrico adicional como una obra de mejora, el requisito inequívoco que establece la Ley de Condominios, *supra*, es que solo puede realizarse mediante la aprobación de dos terceras partes (2/3) de los titulares, que a su vez reúnan las dos terceras partes (2/3) de las participaciones en las áreas comunes. Mas aun, ya que en este caso se requiere una derrama para la adquisición del generador eléctrico adicional en cuestión, la misma ley establece un

requisito adicional. Y es que, en este caso, el requisito es que el consentimiento debe ser unánime del Consejo de Titulares y no meramente la mayoría. Se cometieron el primer y segundo error.

Al haberse cometido el primer y segundo error, es innecesario discutir el tercer y cuarto error. Ello, ya que es claro que el requisito para la adquisición del generador eléctrico adicional, al requerir derrama, es el consentimiento unánime del Consejo de Titulares, cosa que no ocurrió. Por lo que, procede **revocar** la *Resolución Sumaria* emitida por el DACo.

**-IV-**

Por los fundamentos que anteceden, **revocamos** la *Resolución Sumaria* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís<br>Secretaria del Tribunal de Apelaciones